UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COURTNEY DARR,                          )
                        Plaintiff,      )
                                        )       No. 1:19-cv-412
-v-                                     )
                                        )       Honorable Paul L. Maloney
MICHIGAN STATE UNIVERSITY, et al.,      )
                        Defendants.     )
                                        )

## OPINION

This matter is before the Court on Defendants' motion to dismiss (ECF No. 18). For the reasons to be explained, the motion will be granted.

## I.

Plaintiff Courtney Darr brings claims against Michigan State University ("MSU") and three of its employees[1] relating to her allegedly wrongful termination from the MSU College of Education's doctoral program in School Psychology. The following facts are taken from the complaint (ECF No. 1).

In the fall of 2014, Darr began a PhD program at MSU. The first two years went quite well: Darr earned a 4.0 grade point average. In the third year of the program (beginning in the fall of 2016), Darr was required to complete a yearlong course and 600 hours of internship in the public education system. Now-dismissed defendant Sara Leggett was Darr's field supervisor while she interned in the Okemos School District. The two did not get along well.

_____
[1] The remaining defendants have already been dismissed (*see* ECF Nos. 20, 25).

From November 10-13, 2016, Darr traveled across the country to a family funeral. On November 15, Darr and Leggett had a meeting. In that meeting, Leggett gave Darr negative feedback about her performance in the internship. Darr's "eyes started to water," and Leggett said "Oh, I made you cry." Darr told Leggett that it was involuntary, and likely because she was quite tired from the funeral trip.

Later in the month, Darr met with Leggett and MSU School Psychology Department Director Dr. Jana Aupperlee. That meeting consisted mostly of a discussion of the November 15 meeting. At the later meeting, Dr. Aupperlee and Leggett questioned Darr about her watery eyes to the point that she felt "exasperated and embarrassed." At some point, Darr disclosed that she took medication for a diagnosed anxiety disorder and asked that the Defendants make accommodations for her anxiety. The requested accommodations including providing prompt and direct feedback, answering Darr's questions, responding to Darr's request to seek supervision, increased transparency about the nature of meetings, and allowing Darr to respond in writing to feedback.

During the following semester (December 2016 to April 2017), Darr felt she was being made by Leggett to comply with "unrealistic and unhealthy work expectations." Darr claims that she "continued to perceive discriminatory actions" from Leggett, but it is not clear what those actions were.

Darr's final portfolio assignment in April 2017 received an assessment of "subpar," which was surprising to Darr because she had received positive feedback on a draft of the portfolio in February 2017. Darr alleges that during the 2016-2017 school year, she was assigned to complete nine evaluations, while her peers only had to complete three or four.

She also alleges that she was required to put more time in the field than her classmates, and that Leggett "frequently interrupted" her during discussions. At some point during this school year, Leggett told Darr that she was unsure how to best provide her feedback given her anxiety.

In June 2017, Darr provided Dr. Aupperlee written notice of concerns of "discriminatory behaviors" of Leggett. Again, the complaint does not state what these alleged discriminatory behaviors were. At a meeting in August 2017, Darr learned that she had failed the course and the internship, but at the same meeting, Dr. Aupperlee stated that Darr was "a 4.0 student with an occasional 3.5". It appears that Darr retook the class in the 2017-2018 school year; on October 31, 2017, Dr. Aupperlee told Darr she was doing a great job. On November 21, 2017, Darr was asked to meet with her advisor, Dr. John Carlson, and Dr. Aupperlee regarding her performance. At that meeting, Darr was given negative feedback. Darr was "forced to concede" that she was not meeting their expectations.

In December 2017, Darr registered with the MSU Resource Center for Persons with Disabilities ("RCPD") to receive "accommodations," though it is not clear what these accommodations were. On January 23, 2018, Darr received a Verified Individualized Services or Accommodations ("VISA") from RCPD. But before she received VISA, on January 8, 2018, Darr was dismissed from the PhD program and terminated from her teaching assistantship.

Around February 23, 2018, Darr sent a request for an appeal hearing to then-department chair Dr. Richard Prawat. Dr. Prawat did not forward the hearing request to the chair of the hearing board until April 4, 2018. On May 8, 2018, the hearing was conducted,

and on May 11, 2018, Darr's request was denied. On May 18, 2018, Darr submitted an appeal request to the University Graduate Judiciary ("UGJ"). On June 5, 2018, the UGJ appeal meeting was held, but none of the parties were present. The UGJ notified Darr that her concerns were "not in their jurisdiction."

At some point, Darr also contacted the MSU Office of Institutional Equity ("OIE") and filed a complaint. Through the OIE, she was granted an option to propose an informal resolution, which she did, but Dr. Aupperlee rejected that proposal. OIE closed the investigation as of April 26, 2019.

Darr is now suing MSU and Drs. Aupperlee, Carlson, and Prawat. She brings three claims, all centered around the "hostile environment" she encountered as a result of her anxiety disorder: discrimination in violation of (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*; (2) the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq.*; and (3) the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. § 37.1101, *et seq.* Defendants have moved to dismiss the complaint for failure to state a claim against them.

## II.

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule

12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face." *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). If plaintiffs do not "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. For Bio-Ethical Reform*, 648 F.3d at 369. The Sixth Circuit has noted that courts "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). However, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"; rather, "it must assert sufficient facts to prove the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Rhodes v. R&L Carriers, Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

## III.

First, the Court considers Darr's claims against the three individual defendants. The complaint does not make clear whether Darr is suing the doctors in their individual capacity or in their official capacity, but either way, they must be dismissed. The ADA, RA, and PWDCRA do not provide causes of action against individuals. *Everson v. Leis*, 556 F.3d 484, 501 n. 7 (6th Cir. 2009) (ADA); *Bevington v. Ohio Univ.*, 93 F. App'x 748, 750 (6th Cir. 2004) (RA); *Down v. Ann Arbor Public Schools*, No. 17-13456, 2018 WL 6649722, at *4 (E.D. Mich. Dec. 19, 2018) (PWDCRA). Accordingly, the doctors cannot be sued in their individual capacity. To the extent that they are sued in their official capacity, they still must be dismissed: those claims are no different than Darr's claims against MSU and the claims become duplicative. *See Meade v. Michigan Dep't of Corr.*, No. 1:12-cv-287, 2013 WL 890240, at *5 (W.D. Mich. Feb. 11, 2013), *report and recommendation adopted*, 2013 WL 889511 (W.D. Mich. Mar. 8, 2013). Therefore, all three individual defendants must be dismissed.

That leaves only MSU, who argues that it is an agency of the State of Michigan and therefore, it is entitled to sovereign immunity under the Eleventh Amendment. That is true: MSU is effectively an arm of the State entitled to Eleventh Amendment immunity. *Hill v. Board of Trustees of Michigan State Univ.*, 182 F. Supp. 2d 621, 625-26 (W.D. Mich. 2001). And Title II of the ADA only abrogates sovereign immunity to the extent that a plaintiff claims she has been denied a right secured by the Due Process Clause because of a disability. *Robinson v. Univ. of Akron School of Law*, 307 F.3d 409, 413 (6th Cir. 2002). A claim that the plaintiff is denied access to public education on the basis of a disability sounds in equal

6

protection, not due process, so it is barred by sovereign immunity. *Id.* Darr does not object to this conclusion. Count I will be dismissed.

Turning to Count II and the RA: Darr argues that MSU has waived its sovereign immunity and consented to be sued under the RA. This is also true: the RA explicitly prohibits a program that receives federal funding from discriminating against a person based on a disability, meaning that the state has waived Eleventh Amendment immunity against RA claims. *Id.* at 411. Count II survives sovereign immunity analysis.

But MSU argues that Darr's RA hostile environment claim fails on the merits. To establish a hostile environment claim, Darr must plead facts establishing that she:  (1) was disabled; (2) was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) defendant either knew or should have known about the harassment and failed to take corrective measures. *See Plautz v. Potter*, 156 F. App'x 812, 818 (6th Cir. 2005).

To show the first element, that she was disabled, Darr must show that she suffers from a "physical or mental impairment that substantially limits one or more of the major life activities." *Id.* Darr alleges that her anxiety disorder affects her ability to learn, communicate, and concentrate (Complaint at ¶ 83). There are no factual allegations contained in the complaint that support this conclusion. In fact, Darr alleges that she completed the first two years of her PhD program with a 4.0, which tends to show that she does not struggle with the ability to learn, communicate, and concentrate. However, Darr does allege that she has been diagnosed with anxiety disorder by a doctor. So, taking that fact in the light most favorable to Darr, it is plausible that her diagnosed anxiety disorder substantially limits some areas of life.

For the purposes of this motion, the Court finds that the pleadings establish that Darr was disabled within the meaning of the RA.

To show that she was subject to unwelcome harassment, Darr must allege that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). The Court must consider all circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris*, 510 U.S. at 23). Some workplace actions do not factor into this analysis. For example, "[c]onversations between an employee and [her] superiors about [her] performance does not cause constitute harassment simply because they cause the employee distress." *Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir. 1998).

Darr's complaint contains the following factual allegations regarding harassment: (1) that she was asked to do more evaluations than some of her classmates; (2) that she was "frequently interrupted" by Leggett during class discussion; and (3) that Leggett and Dr. Aupperlee engaged in unidentified "discriminatory actions" after she disclosed her disability. To the extent that Darr also claims that conversations between her, Dr. Aupperlee, and Leggett were stressful for her, those cannot serve as the basis for a hostile environment claim. *See id.* The Court finds that the remaining actions—interruptions during class discussion and

additional performance evaluations—do not rise to the level of severe and pervasive "intimidation, ridicule, and insult" that establishes a hostile environment. *Plautz*, 156 F. App'x at 818-19.

Moreover, even if these actions were pervasive, there are no allegations in the complaint that tie this alleged harassment to Darr's disability. *See C.R. v. Novi Community School District*, No. 14-14531, 2017 WL 528264, at *15-16 (E.D. Mich. Feb. 9, 2017) (granting summary judgment where purported harassment was not tied to claimed disability). Nothing in the complaint alleges that Darr was subject to ridicule or insult because of her anxiety. The complaint alleges that Darr has anxiety and that she was harassed in some measure, but there is nothing that connect these two data points. Therefore, the Court finds that Darr has not made the requisite showing on the second and third elements of her RA claim, and therefore, Count II must be dismissed.

After dismissing Counts I and II, the Court is left with only the state law claim that MSU violated the PWDCRA. In the absence of any federal claims, the Court declines to exercise supplemental jurisdiction over Count III. 28 U.S.C. § 1367(c)(3).

## IV.

For these reasons, the Court finds that the individual defendants must be dismissed for failure to state a claim against them. MSU is entitled to sovereign immunity on Count I; Count II fails on the merits; and the Court declines to exercise supplemental jurisdiction over Count III alone. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss (ECF No. 18) is **GRANTED**.

Judgment to follow.

**IT IS SO ORDERED.**

Date:   August 17, 2020                        /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge